UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 4:21-cv-10124-JLK/Becerra

CODY NASH,

 Plaintiff,

vs.

UNITED STATES OF AMERICA and
HERNAN MARIN, individually,

 Defendants.
_____/

**REPORT AND RECOMMENDATION ON
DEFENDANT MARIN'S MOTION FOR JUDGMENT ON THE PLEADINGS[1]**

THIS CAUSE came before the Court on Defendant Agent Hernan Marin's ("Agent Marin") Motion for Judgment on the Pleadings (the "Motion"), ECF No. [21]. Plaintiff Cody Nash ("Plaintiff") filed a Response in Opposition to the Motion, ECF No. [32], and Agent Marin filed a Reply, ECF No. [39]. Agent Marin also filed two Notices of Supplemental Authority, ECF Nos. [41], [48]. After a review of the instant Motion, the arguments of the Parties, the pertinent portions of the record, and the relevant authorities, and for the reasons stated below, it is hereby **RECOMMENDED** that the Motion, ECF No. [21], be **GRANTED**.

**I. BACKGROUND**

Plaintiff's claims arise from a traffic stop that escalated into violence. ECF No. [1]. According to Plaintiff's Complaint, on February 1, 2020, Plaintiff was driving in Monroe County, Florida, when he was stopped by a Sheriff's Deputy, Deputy Corbin Hradecky, for a missing

---

[1] The Motion was referred to the undersigned by the Honorable James Lawrence King, United States District Judge. ECF No. [36].

taillight. *Id.* ¶ 9. During the stop, for unknown reasons, Deputy Hradecky contacted United States Customs and Border Protection ("CBP") and requested that a CBP Agent conduct a canine sniff of Plaintiff's vehicle. *Id.* ¶ 11. Agent Hernan Marin, a CBP Agent and Defendant herein, arrived at the scene and requested to search Plaintiff's vehicle. *Id.* ¶ 12. Plaintiff did not consent. *Id.* Agent Marin then asked Plaintiff to step out of the vehicle. *Id.* ¶ 13. Plaintiff complied. *Id.*

Once out of the vehicle, Plaintiff "made a slight step away to speak privately" with a family member over the phone. *Id.* ¶ 16. In response, Agent Marin "immediately and violently grabbed Plaintiff Nash's right arm and forcefully slammed his face onto the rear back door window of Plaintiff Nash's vehicle approximately four times"; "shoved Plaintiff Nash several times and forcefully threw him to the muddy asphalt ground, causing the right side of his face to hit the ground"; "grabbed Plaintiff Nash's head and slammed it into the asphalt"; "put his knee onto Plaintiff Nash's head pressing it into the ground, held his taser at Plaintiff Nash's head, and threatened to tase him." *Id.* ¶¶ 18–20. Plaintiff did not resist. *Id.* ¶ 21.

Shortly thereafter, Deputy Hradecky and/or Agent Marin placed Plaintiff in handcuffs, and Deputy Hradecky placed Plaintiff in his squad car. *Id.* ¶¶ 22–23. Agent Marin then performed an exterior canine search of Plaintiff's vehicle, wherein the canine allegedly "alerted near Plaintiff Nash's driver's seat". *Id.* ¶ 24. Deputy Hradecky and Deputy Garrett Bragg then "conducted an extensive search of Plaintiff Nash's vehicle." *Id.* ¶ 28. The search did not yield any contraband. *Id.* Plaintiff was issued a warning for "no turn signal/taillight" and released. *Id.* ¶ 29. After the confrontation, Plaintiff went to a hospital where he was "diagnosed with a headache, neck pain, neck strain, and an acute head injury." *Id.* ¶ 31.

Plaintiff filed the Complaint on December 15, 2021, against Defendants United States of America (the "Government") and Agent Marin. ECF No. [1]. The Complaint alleges: (1) violation

2

of the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* ("FTCA") against the Government for unlawful search and seizure (Count I); (2) violation of the FTCA by the Government for assault (Count II); (3) violation of the FTCA by the Government for battery (Count III); (4) an action against Agent Marin pursuant to *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971) for excessive force in violation of the Fourth Amendment (Count IV); and (5) an action against Agent Marin pursuant to *Bivens* for unlawful search and seizure in violation of the Fourth Amendment (Count V). *See generally id.* On February 25, 2022, Agent Marin filed his Answer and Affirmative Defenses. ECF No. [10].

That same day, the Government filed a Motion to Dismiss Count I for lack of subject-matter jurisdiction. ECF No. [9]. Plaintiff conceded that, only as to Count I, there was no subject matter jurisdiction, and agreed to "dismiss/withdraw" Count I. ECF No. [13] at 3. Accordingly, the District Court granted the Government's Motion and dismissed Count I. ECF No. [16]. Thereafter, the Government filed its Answer and Affirmative Defenses as to the remaining counts. ECF No. [18].

### A. The Instant Motion

Agent Marin filed the instant Motion for Judgment on the Pleadings (the "Motion"), arguing that given the United States Supreme Court's recent ruling in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), Plaintiff's two *Bivens* claims against Agent Marin (Counts IV and V) are no longer viable. ECF No. [21] at 3.

Plaintiff filed his Opposition, ECF No. [31], and an Amended Opposition, ECF No. [32]. Plaintiff concedes that *Egbert* forecloses his *Bivens* claim for excessive force and withdrew Count IV "in its entirety." *Id.* at 6. However, as to Plaintiff's *Bivens* claim for unreasonable search and seizure (Count V), Plaintiff maintains that the claim remains unaffected by the recent *Egbert*

3

ruling. *Id.* at 11. Agent Marin filed a Reply in Support of the Motion on August 4, 2022, ECF No. [39], and two Notices of Supplemental Authority, ECF No. [41], ECF No. [48].

## II. ANALYSIS

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Judgment on the pleadings "is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo, N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (quoting *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)). "In determining whether a party is entitled to judgment on the pleadings, we accept as true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party." *Id.*

"A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss." *Guarino v. Wyeth LLC,* 823 F. Supp. 2d 1289, 1291 (M.D. Fla. 2011). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading is facially plausible when it states enough facts for the court to draw a "reasonable inference that the defendant is liable for the" alleged conduct. *Id.* The factual allegations must provide more than a "sheer possibility." *Id.* When reviewing a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). However, a court need not accept plaintiff's legal conclusions as true. *Sinaltrainal v. Coca–Cola Co.*, 578

F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamed v. Palestinian Auth.*, 566 U.S. 449 (2012).

Count V, the remaining count at issue here, is pled pursuant to *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971). The Supreme Court in *Bivens* created a damages remedy against federal officials "acting under color of [their] authority" for violation of constitutional rights. *Bivens*, 403 U.S. at 389. Specifically, the Supreme Court provided a remedy to a plaintiff who alleged a violation of his Fourth Amendment right to be free from unreasonable search and seizure, where an agent from the Federal Bureau of Narcotics "acting under claim of federal authority, entered [the plaintiff's] apartment and arrested him for alleged narcotics violations," without a warrant or probable cause. *Id.* Thereafter, the "*Bivens* remedy" was extended twice by the Supreme Court. First, in *Davis v. Passman*, 442 U.S. 228 (1979), the Supreme Court permitted a *Bivens* claim for a violation of the plaintiff's Fifth Amendment rights under the due process clause for gender discrimination, and second in *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court permitted a *Bivens* claim for violation of a plaintiff's Eighth Amendment right to be free from cruel and unusual punishment for failure to provide adequate medical treatment.

Approximately forty years after *Bivens* was decided, the Supreme Court in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) squarely addressed the question of whether a damages remedy against federal officials violating constitutional rights should be fashioned by the courts. There, the plaintiffs were aliens who were detained after September 11, 2001, pursuant to a "hold-until-cleared" policy. *Id.* at 1852. The plaintiffs sued federal officials for violations of their Fifth Amendment right to substantive due process, Fifth Amendment right to equal protection, and Fourth Amendment right to be free from unreasonable searches and seizures (related to allegedly baseless strip searches in the detention facility). *Id.* at 1853. In assessing whether *Bivens* should

be extended to the plaintiffs' situation, the Supreme Court in *Ziglar* outlined a two-step process by which Courts should determine whether application of *Bivens* is proper. *Id.* at 1857.

First, the Court outlined that lower courts must determine whether the context presented "is different in a meaningful way from previous *Bivens* cases decided by this [Supreme] Court." *Id.* at 1859. The specific cases for comparison are limited to *Bivens* (Fourth Amendment claim regarding unreasonable search and seizure); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment claim under the due process clause for gender discrimination); and *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment claim under the cruel and unusual punishment clause for failure to provide adequate medical treatment to prisoner). *Id.* at 1854–55. The Court provided a non-exhaustive list of ways in which a case may be "meaningfully different" from the three cornerstone *Bivens* cases:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

*Id.* at 1860. If the case is meaningfully different from *Bivens*, *Davis*, and *Carlson*, then a court must ask whether any "special factors counsel[] hesitation in the absence of affirmative action by Congress." *Id.* at 1857 (quoting *Carlson*, 446 U.S. at 18). The Court noted that such special factors may include whether there is "an alternative remedial structure present in a certain case" because "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Id.* at 1857, 1863.

Last year, the Supreme Court in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), again addressed whether and when *Bivens* should be extended to provide a remedy in a particular case. The plaintiff

in *Egbert* was the owner of a bed-and-breakfast abutting the Canadian border. *Egbert*, 142 S. Ct. at 1800. The area surrounding the bed-and-breakfast was known to law enforcement as "a hotspot for cross-border smuggling of people, drugs, illicit money, and items of significance to criminal organizations." *Id.* The plaintiff was well-acquainted with the CBP agents in the area, and even served as a confidential informant for a period of time. *Id.* at 1800.

On March 20, 2014, a CBP agent, Agent Egbert, stopped the plaintiff and asked about guests staying at the bed-and-breakfast. *Id.* at 1801; *see also Boule v. Egbert*, 998 F.3d 370, 386 (9th Cir. 2021), *overruled by Egbert*, 142 S. Ct. 1793 (2022). The plaintiff informed Agent Egbert that a Turkish national would be arriving at the bed-and-breakfast later that day. *Egbert*, 142 S. Ct. at 1801. Believing that the Turkish national was arriving for illegal purposes, Agent Egbert followed the plaintiff's vehicle into the driveway of the bed-and-breakfast to check the Turkish national's immigration papers. *Id.* Agent Egbert asked the plaintiff if he could enter the property, but the plaintiff declined. *Id.* The situation quickly escalated and Agent Egbert "lifted [the plaintiff] off the ground and threw him against the SUV" then "threw him to the ground." *Id.* Thereafter, Agent Egbert checked the Turkish national's immigration papers, found no illegal activity, and left the property. *Id.*

The plaintiff filed a grievance with the CBP and initiated a lawsuit against Agent Egbert individually under *Bivens* for use of excessive force in violation of the Fourth Amendment, and retaliation in violation of the First Amendment. *Id.* at 1801–02. The District Court for the Western District of Washington granted summary judgment in favor of Agent Egbert, and the Ninth Circuit Court of Appeals reversed. *Boule v. Egbert*, 998 F.3d 370 (9th Cir. 2021), *overruled by Egbert*, 142 S. Ct. 1793 (2022). The Ninth Circuit applied the *Ziglar* two-step test and determined that the

Fourth Amendment claim arose in a new context, but that no special factors counseled hesitation in extending a *Bivens* remedy to the case. *Id.* at 387.

On appeal, the Supreme Court reversed the Ninth Circuit's holding—instead finding that special factors did counsel hesitation in extending *Bivens* into the new context presented. *Egbert*, 142 S. Ct. at 1809. Because the Ninth Circuit conceded that the case presented a new context, the Supreme Court began at step two of the *Ziglar* test: special factors. *Id.* at 1804. However, Justice Thomas clarified that "[w]hile our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a potential damages remedy." *Id.* at 1803. More specifically, the question is "whether there is *any* rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 1805 (quoting *Ziglar*, 582 U.S. at 1858). Justice Thomas emphasized that "[w]hen asked to imply a *Bivens* action, 'our watchword is caution.'" *Id.* at 1803.

The Supreme Court found that two special factors counseled hesitation in extending a *Bivens* remedy to *Egbert*. First, the Court found that concerns regarding national security was a special factor. *Id.* at 1804. The Court stated that "regulating the conduct of agents at the border unquestionably has national security implications," and the establishment of "remedies in the border-security context," is a function of Congress. *Id.* Indeed, the Court noted that "the Judiciary is comparatively ill suited to decide whether a damages remedy against *any* Border Patrol agent is appropriate." *Id.* at 1805 (emphasis added).

Second, the Court found that at least one alternative remedy existed so as to preclude a *Bivens* remedy therein. *Id.* at 1806. Relevant here, the internal grievance procedure of the CBP was deemed by the Court to be a sufficient alternative remedy, despite the fact that the plaintiff

8

would not be entitled to damages from the grievance process. As to the adequacy of the alternative remedy, the Court noted, "we have never held that a *Bivens* alternative must afford rights to participation or appeal." *Id.* Thus, on both the national security and alternative remedy grounds, independently, the Court held that a *Bivens* remedy was precluded. *Id.* at 1809.

Agent Marin argues that *Egbert* is dispositive given that this case presents a "new context" that is meaningfully different than *Bivens* itself, and that the same special factors counseling hesitation in *Egbert* are also present here. *See generally* ECF No. [21]. As to the new context, Plaintiff responds that this is a standard *Bivens* claim where a federal agent conducted an unreasonable search and seizure in violation of Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures. ECF No. [32] at 11. As to special factors, Plaintiff argues: (1) the Court need not even reach special factors because no new context is presented; (2) national security is not at issue here purely by virtue of Agent Marin's status as a CBP agent, as he was performing a standard law enforcement function that did not have a national security related objective; and (3) the FTCA is not an adequate alternative remedy, because it has historically coexisted with a *Bivens* remedy. *Id.* at 14–18. Although *Egbert* counsels that the single question at issue is "whether there is any reason to think that Congress might be better equipped to create a new damages remedy[,]" the undersigned will review the matter under the guidance of the *Ziglar* two-step test, and the lens of the single question presented by *Egbert*. Under either, Agent Marin's Motion should be **GRANTED**.

First, in considering whether a case presents a "new context," the Court is guided by the Supreme Court's admonition that an extension of *Bivens* "is now considered a disfavored judicial activity." *Ziglar*, 137 S. Ct. at 1864 (internal quotations omitted). But the premise that extending *Bivens* is disfavored is far from new. "As one court recently noted, '[t]he story of *Bivens* is a saga

9

played out in three acts: creation, expansion, and restriction.'" *Senatus v. Lopez*, No. 20-cv-60818, 2022 WL 16964153, at *3 (S.D. Fla. Oct. 12, 2022), *report and recommendation adopted*, No. 20-cv-60818, 2022 WL 16961323, at *1 (S.D. Fla. Nov. 16, 2022). The "expansion" phase, however, lasted only for the duration of two opinions—*Davis* and *Carlson*—and then came the "restriction." *Id.* Indeed, the Supreme Court has not recognized an extension of *Bivens* since 1980, in *Carlson*, and has subsequently "progressively chipped away the [*Bivens*] decision." *Id.* (quoting *Silva v. United States*, 45 F.4th 1134, 1139 (10th Cir. 2022)).

Against that backdrop, the Court must first determine whether the context presented here "is different in a meaningful way from previous *Bivens* cases decided by this [Supreme] Court"—namely, *Bivens*, *Davis*, and *Carlson*. *Ziglar*, 137 S. Ct. at 1859. Examples of "meaningful" differences include, but are not limited to, "the constitutional right at issue; . . . the statutory or other legal mandate under which the officer was operating;" and "the risk of disruptive intrusion by the Judiciary into the functioning of other branches." *Id.* at 1860. Indeed, "[a] claim may arise in a new context even if it is based on the *same* constitutional provision as a claim in a case which a damages remedy was previously recognized." *Hernandez v. Mesa*, 140 S. Ct. 735 (2020) (emphasis added).

Agent Marin argues that this case arises in a new context because it presents a new category of defendants—namely, it involves a CBP agent whereas *Bivens* involved a Federal Bureau of Narcotics agent. ECF No. [21] at 8–10. Agent Marin relies on *Egbert* for the proposition that the presence of a "new category of defendants" automatically gives rise to a new context. *Id.* at 9 (quoting *Egbert*, 142 S. Ct. at 1803). Plaintiff does not address this argument directly, but rather argues broadly that this case is similar enough to *Bivens* to avoid a determination that it arises in a new context. ECF No. [32] at 7–13.

The facts of this case clearly present a "new context." The Supreme Court in *Egbert*, relying on *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61 (2001), noted that "a case that involves a 'new category of defendants'" is one example of a new context for a *Bivens* claim. *Egbert*, 142 S. Ct. at 1803. Like *Egbert*, this case involves a CBP agent operating under a statutory mandate that meaningfully differs from that of the Federal Bureau of Narcotics in that the primary function of the agency concerns national security as opposed to more standard law enforcement functions. *Id.* at 1804; *see also Ziglar*, 137 S. Ct. at 1860 ("A case might differ in a meaningful way because of the rank of the officers involved . . . the statutory or other legal mandate under which the officer was operating . . . or the presence of potential special factors that previous *Bivens* cases did not consider."). To be sure, the agents here were, as Plaintiff alleges, performing more routine police functions (a traffic stop) than the agents in *Egbert* who were actively concerned with immigration and national security issues. Indeed, if this were the only difference perhaps the Court would be persuaded in Plaintiff's favor, but there are other differences that are material that distinguish the case at hand.

Importantly, there are key factual differences distinguishing this case from *Bivens*. For example, this case involves alleged police misconduct in connection with a valid traffic stop whereas the events in *Bivens* concern the warrantless entry of a person's home. Indeed, the search in this case was only after a police dog alerted for the possibility of narcotics, whereas *Bivens* involved the search of a person's home and a subsequent strip search of the person himself without any probable cause. Plaintiff here was temporarily restrained and placed in a sheriff's vehicle, whereas the plaintiff in *Bivens* was arrested and transported to prison. These factual differences alone are enough to hold that this presents a new context, as "even a modest extension [of *Bivens*] is still an extension." *Ziglar*, 137 S. Ct. at 1857. Indeed, given that the Supreme Court has

repeatedly declined to extend *Bivens* and the facts here are "meaningfully different" as defined by the Supreme Court, there is no legally defensible way, given the precedent this Court must respect, to find otherwise.

As to special factors, the second step, there is no dispute that *Egbert* controls and is dispositive. Agent Marin first argues that national security implications counsel hesitation here because Agent Marin was acting in his capacity as a CBP agent "to secure the border against narcotics". ECF No. [21] at 12–14. Plaintiff disputes that characterization, arguing that Agent Marin was performing a standard law enforcement function in assisting with a traffic stop based on a missing taillight, which had nothing to do with national security. ECF No. [32] at 14–15. Although Plaintiff is correct that the agent here was not performing the same kind of border patrol function as the agents in *Ziglar* and *Egbert*, the Supreme Court has cautioned courts not to perform their review at "too granular a level" because the proper inquiry is "whether a court is competent to authorize a damages action not just against [the] Agent [], but against Border Patrol Agents generally" and "[t]he answer, plainly, is no." *Id.* at 1806.

The second special factor Agent Marin asserts is that alternative remedies already exist to address Plaintiff's case. Special factors may include whether there is "an alternative remedial structure present" because "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Id.* at 1857, 1863. Agent Marin puts forth two remedies as alternative to a *Bivens* remedy herein. *See* ECF No. [21].

First, Agent Marin asserts that the FTCA is an adequate alternative remedy. ECF No. [21]. Plaintiff counters that the FTCA is a supplement to *Bivens*, rather than an alternative remedy, and that the existence of the FTCA should not bar a *Bivens* claim. ECF No. [32] at 17–18. Whether the FTCA is an adequate alternative remedy has not been decided by the Eleventh Circuit. *See,*

*e.g., Senatus*, 2022 WL 16964153, at *6, n.2 (declining to reach the issue and noting that "[c]ourts are split on whether the FTCA serves as an alternative remedy to a *Bivens* action"). The Court here does not need to reach the issue of whether the FTCA is a sufficient alternative remedy because CBP's internal grievance procedure, the second alternative remedy relied upon by Agent Marin, is the exact procedure that the Supreme Court found was a sufficient alternative remedial measure to defeat a plaintiff's claim. *See Egbert*, 142 S. Ct. at 1806. Accordingly, the undersigned finds, as it must in light of the findings in *Egbert*, that the internal grievance procedure identified by Agent Marin is an adequate alternative remedy, which precludes Count V.

During oral argument, counsel for Plaintiff noted that *Egbert* appears to leave individuals like Nash, seeking redress in a federal law enforcement misconduct case, without effective recourse. Nash's point is not an exaggeration. The impact of the Supreme Court's most recent rulings have been the "death knell to [plaintiffs'] claims." *Senatus*, 2022 WL 16964153, at *3. Indeed, Justice Gorsuch in his concurrence in *Egbert*, noted that "[i]n fairness to future litigants and to our lower court colleagues," the Court should have "return[ed] the power to create new causes of action to the people's representatives in Congress" rather than "hold out that kind of false hope, and in the process invite still more protracted litigation destined to yield nothing." *Egbert*, 142 S. Ct. at 1810 (Gorsuch, J., concurring in the judgment). Whether stripping our courts from addressing these constitutional violations, a role the courts have held in this context for decades, is correct is not for this Court to address. The Court has no power to ignore the Supreme Court's rulings in this area which are clear and dispositive of this case. The Supreme Court has spoken, and the last word, if the People so desire it, now lies with Congress.

**III.   RECOMMENDATIONS**

As to Count IV, Plaintiff concedes that *Egbert* forecloses his *Bivens* claim for excessive force, and "withdraws Count IV in its entirety." ECF No. [32] at 6.  Therefore, it is **RECOMMENDED** that Agent Marin's Motion for Judgment on the Pleadings, ECF No. [21], be **GRANTED** as to Count IV.

As to Count V, for the reasons discussed above, it is hereby **RECOMMENDED** that Agent Marin's Motion for Judgment on the Pleadings, ECF No. [21], be **GRANTED**.

**IV.   OBJECTIONS**

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a de novo determination by the District Judge of anything in this Report and Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida on February 14, 2023.

_____
JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE